**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

CASE NO:

ROBERT DIX, on behalf of himself
and all others similarly situated,

    Plaintiff(s),

v.

RCSH OPERATIONS, LLC.

    Defendant.

_____/

**COLLECTIVE ACTION COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**

Plaintiff, ROBERT DIX ("Plaintiff") on behalf of himself and others similarly situated, files this Collective Action Complaint and Demand for Jury Trial against Defendant, RCSH OPERATIONS, LLC ("RUTH'S CHRIS"), for failure to pay federal minimum wages for certain hours worked to all Restaurant Servers (hereinafter "Servers" or "class members") who worked in the United States, pursuant to 29 U.S.C. § 216(b), as follows:

**INTRODUCTION**

1. Defendant unlawfully deprived Plaintiff, and all others similarly situated, of applicable federal minimum wages during the course of their employment. This action has been filed to cure and correct Defendant's minimum wage violations committed throughout the United States on behalf of all Servers who worked for Defendant within the last three (3) years. Defendant paid all restaurant servers the "tip credit" wage for all hours worked during a shift, notwithstanding that Servers were required to spend more than 20% of their shifts performing non-tipped duties and responsibilities. As a result, Plaintiff, and all restaurant servers throughout the United States, have been denied federally mandated

minimum wage in one or more workweeks for time spent performing this "non-tipped" work. Defendant has likewise violated the minimum wage requirements under federal law by requiring Servers to purchase uniforms and tools of the trade out of their own pocket and then wear these uniforms and use these tools each day of their employment. Defendant failed to ever reimburse its employees for the cost of this uniform and tools which drove Plaintiff's and all similarly situated employees' wages below the acceptable rate during their first week of employment with Defendant.

## PARTIES

2. During all times material hereto, Plaintiff was a resident of Lee County, Florida, over the age of 18 years, and otherwise *sui juris*.

3. Plaintiff and the class members are/were restaurant servers who worked for Defendant within the last three (3) years throughout the United States.

4. Plaintiff worked for Defendant from August 2018 until September 2019.

5. The proposed class members worked for Defendant in the same/identical capacity as Plaintiff in that they were restaurant Servers for Defendant.

6. Plaintiff and the proposed class members were subjected to similar violations of federal law. Plaintiff seeks certification under 29 U.S.C. § 216(b) of the following class for failure to pay federally mandated minimum wages:

> **All Restaurant Servers who worked for Defendant throughout the United States during the three (3) years preceding this lawsuit who were required to purchase a uniform prior to beginning their first week of employment with Defendant.**

7. Plaintiff further seeks certification under 29 U.S.C. § 216(b) of the following additional class for failure to pay federally mandated minimum wages:

2

> **All Restaurant Servers who worked for Defendant throughout the United States during the three (3) years preceding this lawsuit who were required to spend more than 20% of their shifts performing "non-tipped" incidental duties and did not receive the full applicable minimum wage for this work.**

8. The precise size and identity of each class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendant; however, Plaintiff estimates that the total number of class members could exceed 3,500 Servers across the United States.[1]

9. During all times material hereto, Defendant, RUTH's CHRIS, was a New Orleans limited liability company operating and transacting business within Lee County, Florida, within the jurisdiction of this Honorable Court.  On information and belief, Defendant operates at least fifteen (15) separate locations throughout the State of Florida, and at least one hundred fifteen (115) locations nationwide.

10. Defendant, RUTH's CHRIS, was Plaintiff's employer during all times pertinent to the allegations herein.

11. During all times material hereto, Defendant was vested with the ultimate control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices during the relevant time period.

**JURISDICTION AND VENUE**

12.  This action is brought under 29 U.S.C. § 216(b) to recover damages from Defendant and reasonable attorney's fees and costs.

---

[1] Defendant currently operates at least 115 locations throughout the United States with an average of roughly 20 restaurant servers in each location at any given time for a total of 2,300 restaurant servers.  On information and belief, given the turnover rate of employees in the restaurant industry, it is entirely reasonable to infer that Defendant has employed at least 30-40 servers annually at each location in each of the past three (3) years prior to the filing of this lawsuit.

3

13. All acts and omissions giving rise to this dispute took place within Lee County, Florida, which falls within the jurisdiction of this Honorable Court.

14. Defendant regularly transacts business in Lee County, Florida, and jurisdiction is therefore proper.

15. Venue is also proper within Lee County, Florida.

## FLSA COVERAGE

16. Defendant is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendant had at least two employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

17. Defendant's employees handled goods such as napkins, silverware, appliances, food items, restaurant equipment, chairs, tables, vacuum cleaners, and other materials that had previously travelled through commerce.

18. At all material times (during the last five years), Defendant had an annual gross revenue in excess of $500,000.00 in 2015, 2016, 2017, 2018, 2019, and is expected to gross in excess of $500,000.00 in 2020.

## GENERAL ALLEGATIONS

19. Defendant operates at least fifteen (15) steakhouses throughout the State of Florida.

20. Defendant operates at least one hundred fifteen (115) steakhouses throughout the United States.

21. Defendant employed Plaintiff at its steakhouse location in Bonita Springs, Florida.

22. Defendant is typically opened seven (7) days a week.

23. Defendant's hours of operation are typically 5pm through 10pm Monday through Saturday and 5pm through 9pm on Sundays. During certain months out of the year, restaurant Servers would be required to report to the restaurant at 3pm.

24. Plaintiff and the class members worked as restaurant "Servers" for Defendant during the past three (3) years.

## FIRST WEEK OF EMPLOYMENT

25. Defendant has implemented and regularly enforces a company-wide policy that requires all newly hired Servers to undergo a one (1) week period of training. During this week of training newly hired Servers are required to shadow another server and/or manager throughout the restaurant for multiple shifts. During the week of training Servers are paid the applicable federal and/or state minimum wage per hour.

26. Defendant has also created, follows and strictly enforces a company-wide uniform policy that requires all new Servers to personally purchase a uniform and wear such uniform in the restaurant each and every day of their employment.

27. The required uniform for Servers is comprised of white dress shirts, black formal slacks, a muted non-offensive colored tie, black socks and non-slip shoes.

28. Defendant also required Servers to purchase a wine key, black pens, and lighters.

29. Defendant hired Plaintiff in August 2018 and required Plaintiff to purchase a uniform before Plaintiff could begin work.

30. Defendant also required Plaintiff to undergo the training period which is required of all newly hired Servers.

31. Prior to Plaintiff starting his first day of employment and training, the Defendant instructed Plaintiff to purchase a uniform which was comprised of formal white dress shirts (roughly

5

$25 each with 3 purchased), black formal slacks (roughly $40 each with 2 purchased), a tie (roughly $40), black belt (roughly $20), black socks (roughly $5.00) and non-slip shoes (roughly $40 each). In total, Plaintiff spent *at least* $260 purchasing his uniform for work. Defendant instructed Plaintiff to also purchase a wine key ($7), black pens ($5), and a lighter ($0.75). The total amount exceeds $272.00.

32. During the week of training Plaintiff was paid $8.46 per hour and did not receive any tips.

33. Defendant **never** reimbursed Plaintiff or any of the similarly situated Servers for the uniform and tools they were instructed and required to purchase before beginning their employment and training.

34. Defendant **never** reimbursed Plaintiff or any of the similarly situated Servers for the uniform and tools they were instructed and required to purchase at any other point during their employment.

35. Plaintiff and all other similarly situated Servers were required to wear their uniform and use tools each day of work including the training period. If Plaintiff or any of the similarly situated Servers ever failed to wear this uniform, they would not be permitted to work their shift.

36. Defendant required Plaintiff and all other similarly situated Servers to wear their uniform and use tools for the benefit of Defendant in creating and establishing a formal dining experience for customers.

37. In light of the regular wear and tear on their work uniforms, Plaintiff and other similarly situated individuals were required to replace parts of their uniform throughout their employment and were never reimbursed by Defendant for such costs even though Defendant retained the benefit of this uniform policy.

38. Plaintiff worked about thirty (30) hours during his first week of employment during the training period.

### DEFENDANT REQUIRES PLAINTIFF AND SIMILARLY SITUATED EMPLOYEES TO SPEND IN EXCESS OF 20% OF THEIR SHIFT PERFORMING NON-TIPPED DUTIES AND TASKS INCIDENTAL TO THEIR TIPPED DUTIES AND TASKS

39. After successfully completing the training period, Plaintiff and all other similarly situated Servers would typically be scheduled to report to work at 4:00 p.m. and would be scheduled to work through 10:00 p.m.

40. Throughout Plaintiff's employment, Defendant would instruct Plaintiff and all others similarly situated to report to work at 4:00 p.m. to spend one (1) hour setting up the restaurant. This work included slicing lemons, making coffee, rolling silverware, setting tables, setting chairs, and other activities that are considered "non-tipped" duties and responsibilities that are merely incidental to the Server's primary duties.

41. At the end of a shift, Plaintiff and the class members were required to participate in "breaking down" and closing the restaurant by breaking down and moving tables and chairs, replacing the linens in the dining room, vacuuming and cleaning the floors and tables, and other "non-tipped" duties and responsibilities that are merely incident to the Server's primary duties. At a minimum, the closing responsibilities took thirty (30) minutes to perform but could take as much as two (2) hours on some evenings depending on the volume of business that particular day.

42. During a six (6) hour shift, Plaintiff and the class members were regularly required to spend *more than* 20% of the shift performing the aforementioned "not-tipped" duties and responsibilities.

7

43. For example, when Plaintiff was scheduled to work from 4pm until 10pm, Plaintiff was required to spend *at least* 1 hour performing "non-tipped" duties to set up the restaurant and was required to spend *at least* thirty (30) minutes performing "non-tipped" duties to close down the restaurant.

44. After successfully completing his training period in 2018, Plaintiff was paid $5.23 for every single hour he worked during his shifts. Defendant notified Plaintiff that it would be taking a tip credit in the amount of $3.02 per hour based on the tips received by Plaintiff during his employment in 2018.

45. In 2019, Plaintiff was paid $5.44 for every single hour he worked during his shifts. Defendant notified Plaintiff that it would be taking a tip credit in the amount of $3.02 per hour based on the tips received by Plaintiff during his employment in 2019.

46. Based upon the aforementioned calculations, 1.5 hours out of the 6-hour shift were spent performing "non-tipped" incidental duties. 4.5 hours out of the 6-hour shift were spent performing "tipped" duties.[2]

47. Accordingly, 25% of Plaintiff and the class member's shift was spent performing "non-tipped" duties and responsibilities.

---

[2] During certain workweeks throughout the year, the Servers are required to perform even more "incidental work." For example, during Valentine's Day (and other holidays), restaurant Servers are required to stay and work additional time the night before any such holiday to help re-arrange and transfigure the restaurant's seating layout to maximize the number of tables and seating arrangements. This additional "incidental work" of setting up and rearranging tables throughout the entire restaurant often exceed 2-3 hours. After the conclusion of any such holiday, an additional amount of time is required to breakdown any tables that had been specially set for the holiday and to help return the dining room to its regular configuration. In workweeks such as these, 3.5 hours of an 8 hour shift (or 44%) would be spent performing non-tipped "incidental work."

48. As a result, Plaintiff and the class members are entitled to receive the full federal minimum wage for the 1.5 hours spent each shift performing "non-tipped" incidental duties, as opposed to the reduced "wage credit" they received when performing these incidental duties.

49. During all material times hereto, Plaintiff and all class members were non-exempt employees of Defendant.

50. Plaintiff and the class members worked without being paid the full minimum wage for hours worked.

51. Plaintiff and the class members performed work as Servers which was an integral part of the business for Defendant.

52. Defendant violated the Fair Labor Standards Act ("FLSA") by not paying Plaintiff and the putative class members, at least federal minimum wage for all hours worked.[3]

53. Plaintiff and the class members are entitled to receive at least federal minimum wage for each hour spent performing "non-tipped" incidental work.

54. During their employment Plaintiff or one or more of the class members complained about the illegal practices above and Defendant took no action to stop the illegal practices.

---

[3] Pursuant to 29 C.F.R. § 531.35, wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." *Id.* If an employer requires an employee to pay the costs for tools of the trade that are required for performance of work, there is a violation of the FLSA in any workweek when the costs of items purchased by the employee cuts into the minimum wages required to be paid to him under the Act. *Id.; see, also,* Montoya v. CRST Expedited, Inc., 311 F.Supp.3d 411 (D. Mass. 2018) (FLSA requires employers to pay wages free and clear, which means employers are prohibited from charging employees for expenses for the expenses would drive the employee's pay below minimum wage).  Moreover, under 29 C.F.R. § 531.3, an employer may not require its employee to incur costs of purchasing a uniform when the nature of the business requires the employee to wear a uniform.  *Id.; see, also,* Reich v. Priba Corp., 890 F.Supp. 586 (N.D. Tex. 1995) (Employer violated the FLSA by requiring servers to provide their own uniforms which reduced the employees' wages below the minimum wage required by the FLSA).

55. The additional persons whom may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and whom suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked.

56. Upon information and belief, the records, to the extent any exist, concerning the number of hours and amounts paid to Plaintiff and class members are in the possession and custody of Defendant.

57. Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed or waived.

## CLASS ALLEGATIONS

58. Class members are treated equally and similarly by Defendant, in that they were denied full and proper federal minimum wage for the "non-tipped" work they performed.

59. Class members are treated equally and similarly by Defendant, in that they were denied full and proper federal minimum wage based upon the Defendant's failure to reimburse all Servers the cost of the uniform they were required to purchase and wear in the restaurant every single day of employment.

60. Defendant employed thousands of employees who were not paid federal minimum wage for the "non-tipped" work within the past three (3) years.

61. Defendant employed thousands of employees who were not paid federal minimum wage for the first week of training as a result of the Defendant's failure to reimburse Servers the cost of their uniform and tools – which drove each of their wages well below the federal minimum wage (and resulted in **negative wages**).

62. Plaintiff and the class members were subject to the same policies.

63. Plaintiff and the class members performed the same job duties, as Servers, and were paid in an identical manner by Defendant based on Defendant's failure to compensate Plaintiff and the class members when more than 20% of their shifts consisted of "non-tipped" work.

64. Plaintiff and the class members performed the same job duties, as Servers, and were paid in an identical manner by Defendant based on Defendant's failure to reimburse Plaintiff and the class members at least $150 for the uniform they were required to purchase and wear prior to beginning their first day of employment.  Defendant's failure to reimburse Servers appropriately for the uniform drove the Server's applicable wages well below the federal minimum wage during their first week of training.

65. Plaintiff and the class members were not paid proper federal minimum wage for the hours worked.

66. Defendant failed to keep accurate time and pay records for Plaintiff and all class members to designate how much time was spent performing "non-tipped" work.

67. Defendant was aware of the requirements of the FLSA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the class members in accordance with the law.

68. As a result of Defendant's intentional and willful failure to comply with the FLSA, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs incurred in the prosecution of these claims.

## COUNT I – FEDERAL MINIMUM WAGE VIOLATIONS
## (DEFENDANT'S FAILURE TO REIMBURSE UNIFORM/TOOL EXPENSES)

69. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 68 as though set forth fully herein.

70. Plaintiff and all others similarly situate are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendant.

71. Plaintiff complained to their superiors about Defendant's illegal pay practice, however, Defendant refused and/or failed to compensate Plaintiff and the class members for these violations.

72. Defendant willfully failed to pay Plaintiff and the class members the full minimum wage for one or more weeks of work contrary to the FLSA.

73. As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the class members have been damaged in the loss of minimum wages for one or more weeks of work during the employment with Defendant.

74. Defendants' willful and/or intentional violations of entitle Plaintiff and the class members to an additional amount of liquidated, or double, damages.

75. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, ROBERT DIX, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, RCSH OPERATIONS, LLC, and award Plaintiff: (a) unliquidated minimum wages to be paid by the Defendant; (b) an equal amount of liquidated damages to be paid by the Defendant; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court may deems just and reasonable under the circumstances.

**COUNT II – FEDERAL MINIMUM WAGE VIOLATIONS**
**(ARISING FROM THE PERFORMANCE OF NON-TIPPED DUTIES)**

76. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 75 as though set forth fully herein.

77. Plaintiff and all others similarly situate are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendant.

78. Plaintiff complained to their superiors about Defendant's illegal pay practice, however, Defendant refused and/or failed to compensate Plaintiff and the class members for these violations.

79. Throughout Plaintiff's employment, Defendant would instruct Plaintiff and all others similarly situated to report to work at 4:00 p.m. to spend one (1) hour setting up the restaurant. This work included slicing lemons, making coffee, rolling silverware, setting tables, setting chairs, and other activities that are considered "non-tipped" duties and responsibilities that are merely incidental to the Server's primary duties.

80. At the end of a shift, Plaintiff and the class members were required to participate in "breaking down" and closing the restaurant by breaking down and moving tables and chairs, replacing the linens in the dining room, vacuuming and cleaning the floors and tables, and other "non-tipped" duties and responsibilities that are merely incident to the Server's primary duties. At a minimum, the closing responsibilities took thirty (30) minutes to perform but could take as much as two (2) hours on some evenings depending on the volume of business that particular day.

81. During a six (6) hour shift, Plaintiff and the class members were regularly required to spend *more than* 20% of the shift performing the aforementioned "not-tipped" duties and responsibilities.

82. For example, when Plaintiff was scheduled to work from 4pm until 10pm, Plaintiff was required to spend *at least* 1 hour performing "non-tipped" duties to set up the restaurant and was required to spend *at least* thirty (30) minutes performing "non-tipped" duties to close down the restaurant.

83. After successfully completing his training period in 2018, Plaintiff was paid $5.23 for every single hour he worked during his shifts. Defendant notified Plaintiff that it would be taking a tip credit in the amount of $3.02 per hour based on the tips received by Plaintiff during his employment in 2018.

84. In 2019, Plaintiff was paid $5.44 for every single hour he worked during his shifts. Defendant notified Plaintiff that it would be taking a tip credit in the amount of $3.02 per hour based on the tips received by Plaintiff during his employment in 2019.

85. Based upon the aforementioned calculations, 1.5 hours out of the 6-hour shift were spent performing "non-tipped" incidental duties. 4.5 hours out of the 6-hour shift were spent performing "tipped" duties.

86. Accordingly, 25% of Plaintiff and the class member's shift was spent performing "non-tipped" duties and responsibilities.

87. As a result, Plaintiff and the class members are entitled to receive the full federal minimum wage for the 1.5 hours spent each shift performing "non-tipped" incidental duties, as opposed to the reduced "wage credit" they received when performing these incidental duties.

88. Defendant willfully failed to pay Plaintiff and the class members the full minimum wage for one or more weeks of work contrary to the FLSA.

89. As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the class members have been damaged in the loss of minimum wages for one or more weeks of work during the employment with Defendant.

90. Defendants' willful and/or intentional violations of entitle Plaintiff and the class members to an additional amount of liquidated, or double, damages.

91. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, ROBERT DIX, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, RCSH OPERATIONS, LLC, and award Plaintiff: (a) unliquidated minimum wages to be paid by the Defendant; (b) an equal amount of liquidated damages to be paid by the Defendant; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court may deems just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, ROBERT DIX, requests and demands a trial by jury on all appropriate claims.

**Dated this 12th day of February 2020.**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS- JORDAN RICHARDS, PLLC**
805 E. Broward Blvd. Suite 301
Fort Lauderdale, Florida 33301
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
Jordan@jordanrichardspllc.com
Melissa@jordanrichardspllc.com
Jake@jordanrichardspllc.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on February 12, 2020.

>By: */s/ Jordan Richards*
>JORDAN RICHARDS, ESQUIRE
>Florida Bar No. 108372

**SERVICE LIST:**