```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION

ROBERT DIX, on behalf of
himself and all others
similarly situated and
MICHAEL PALOMBO,

        Plaintiffs,

v.                                Case No:  2:20-cv-98-FtM-29MRM

RCSH OPERATIONS, LLC,

        Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Dismiss Plaintiff's Amended Class/Collective Action Complaint (Doc. #26) filed on June 15, 2020. Plaintiffs filed an Amended Response in Opposition (Doc. #37) on July 2, 2020. For the reasons set forth below, the motion is denied.

**I.**

**A. Parties**

According to the allegations in the operative pleading, defendant RCSH Operations, LLC is a New Orleans limited liability company that operates a nationwide restaurant chain with numerous locations in the state of Florida. (Doc. #6, ¶¶ 1, 13.) Plaintiff Robert Dix is a Lee County, Florida resident who worked for defendant as a restaurant server at a Bonita Springs steakhouse

from August 2018 to September 2019. (Id. ¶ 2, 5, 25.) Plaintiff Michael Palombo joined this action after it was filed and also worked as a server at the Bonita Springs restaurant. (Doc. #21; Doc. #21-1, p. 3.)

### B. Factual Background

According to plaintiffs' allegations, defendant has a company-wide policy requiring all newly hired servers to purchase both a uniform and various tools needed for the position. (Doc. #6, ¶¶ 31-33.) When Dix was hired in August 2018, he was required to purchase a uniform consisting of formal pressed white dress shirts, black formal slacks, a tie, a black belt, black socks, and non-slip shoes. (Id. ¶¶ 34-35.) Dix was also required to purchase a wine key, black pens, and a lighter. (Id.) In total, Dix spent more than $272 on these items. (Id. ¶ 35.) Dix and the other servers were required to wear the uniform and use the tools each day, and if a server failed to wear the uniform, they would not be permitted to work their shift. (Id. ¶ 40.) Regular wear and tear required servers to replace parts of the uniform throughout their employment. (Id. ¶ 42.) Neither Dix nor any other similarly situated servers were ever reimbursed for the uniform or the tools they were required to purchase and replace. (Id. ¶¶ 38-39, 42.)

In addition to the above policy, defendant required all newly hired servers undergo a week of training during which they were paid the applicable federal and/or state minimum wage. (Id. ¶

30.) After the week of training, Dix was paid an hourly wage by defendant, plus the tips he received as a server. (Id. ¶¶ 49-50.) Dix and other servers would typically be scheduled to report to work at 4 p.m. and work through 10 p.m. (Id. ¶ 44.) However, defendant would instruct the servers to spend time setting up and "breaking down" the restaurant, so that during a six-hour shift servers were regularly required to spend twenty-five percent of their shift performing "non-tipped" duties. (Id. ¶¶ 45-47, 52.) At all times, the servers were paid less than minimum wage.[1] (Id. ¶ 55.)

### C. Procedural Background

Dix initiated this action in February 2020 and filed an Amended Class/Collective Action Complaint (Doc. #6) on March 1, 2020. The amended complaint alleges four claims against defendant: Counts One and Two allege violations of the federal Fair Labors Standards Act (FLSA), and Counts Three and Four allege violations of the Florida Minimum Wage Act (FMWA) and Florida's Constitution. (Id. pp. 13-30.) Counts One and Three relate to defendant's failure to reimburse uniform and tool expenses (id. pp. 13-15, 18-24), while Counts Two and Four relate to the performance of non-tipped duties (id. pp. 15-17, 24-30.) The amended complaint

---

[1] Dix was paid $5.23 per hour in 2018 and $5.44 per hour in 2019, plus tips. (Doc. #6, ¶¶ 49-50.) Defendant took a "tip credit" of $3.02 per hour in both years. (Id.)

asserts the FLSA claims as collective actions pursuant to 29 U.S.C. § 216(b) and the FMWA claims as class actions pursuant to Federal Rule of Civil Procedure 23.

On June 15, 2020, defendant filed the Motion to Dismiss currently before the Court. (Doc. #26). Plaintiffs filed an Amended Response in Opposition (Doc. #37) on July 2, 2020, and the matter is now ripe for review.

## II.

### A. Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take

4

them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**B. Analysis**

As noted above, Counts One and Two of the amended complaint allege violations of the FLSA, and Counts Three and Four allege violations of the FMWA and the Florida Constitution. Both the FLSA and the FMWA require employers pay employees a minimum hourly wage. 29 U.S.C. § 206(a); § 448.110, Fla. Stat. To state a claim for a violation of the FLSA or the FMWA, a plaintiff must allege: (1) that he was employed by the defendant during the time period involved; (2) that he was engaged in commerce or the production of goods for commerce or employed by an enterprise engaged in commerce

or in the production of goods for commerce; and (3) that the defendant failed to pay the overtime or minimum compensation required by law. Copley v. Debt Advisory Grp., Inc., 2010 WL 11626625, *2 (M.D. Fla. May 12, 2010) (citations omitted).

### (1) Costs of Uniform and Tools

In Counts One and Three, defendant is alleged to have failed to pay the required minimum wage because it did not reimburse Dix and similarly situated employees for the costs of a uniform and various tools. In its motion, defendant argues that Counts One and Three should be dismissed because (1) the clothing that Dix purchased does not constitute a uniform as a matter of law, and (2) defendant was not required to reimburse Dix for the other items he purchased. (Doc. #26, pp. 4-7.) The Court will address these arguments in turn.

Under the FLSA, "[u]niforms are primarily for the benefit of the employer, [and] therefore a minimum wage employee cannot be required to purchase their own uniforms." Nail v. Shipp, 2019 WL 3719397, *7 (S.D. Ala. Aug. 6, 2019) (citing Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228, 1236 (11th Cir. 2002)). "In Florida, the FMWA expressly adopts the statutory and regulatory provisions of the FLSA." Kubiak v. S.W. Cowboy, Inc., 2014 WL 2625181, *1 (M.D. Fla. June 12, 2014) (citing Fla. Const. Art. X, § 24). In determining what constitutes a "uniform," the Department of Labor

6

(DOL) has provided the following definition in its Field Operations Handbook:

> (f) Definition of "uniforms"
>
> > (1) Although there are no hard-and-fast rules in determining whether certain types of dress are considered uniforms for purposes of section 3(m), the following principles are applicable:
> >
> > > a. If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress, the garments chosen by the employees would not be considered to be uniforms.
> > >
> > > b. On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work (*e.g.*, where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality), such clothing would be considered uniforms.
> > >
> > > c. Other examples would include uniforms required to be worn by guards, cleaning and culinary personnel, and hospital and nursing home personnel.

DOL Field Operations Handbook § 30c12(f). When attire is considered "ordinary street clothing" rather than a uniform, "the expense of purchasing and maintaining such clothing is an expense an employee would encounter as a normal living expense, and is therefore not primarily for the benefit of the employer." <u>Arriaga</u>, 305 F.3d at 1244.

The amended complaint describes the "uniform" defendant required its servers purchase as follows: formal pressed white

7

dress shirts, black formal slacks, a tie, a black belt, black socks, and non-slip shoes. (Doc. #6, ¶ 35.) Defendant argues that such attire does not constitute a "uniform" as a matter of law for purposes of the FLSA. (Doc. #26, pp. 4-6.) Defendant cites to authority from both the DOL as well as various federal courts throughout the country. See U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. FLSA2008-4 (May 15, 2008) (dark colored, non-slip sole shoes were not a "uniform" under the FLSA); U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. WH-466 (July 28, 1978) ("white shirt and trousers of a dark color" do not constitute a uniform); Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 476 (S.D. N.Y. 2015) ("black dress pants, black dress shoes, and black belt" do not constitute a uniform under federal law); Allende v. PS Brother Gourmet, Inc., 2013 WL 11327098, *3 (S.D. N.Y. Feb. 1, 2013) (concluding "black shirt, black pants and cap required of delivery persons are ordinary street clothing and not a uniform" under the FLSA); Darrow v. WKRP Mgmt., LLC, 2010 WL 1416799, *2 (D. Colo. Apr. 6, 2010) (finding plaintiffs failed to plead facts that plausibly showed they were required to purchase "uniforms" under the FLSA based on legal authority that "black dress pants" and "restaurant-quality non-slip shoes" do not constitute a "uniform").

In response, plaintiffs argue that whether the clothes the servers were required to purchase constitute a "uniform" is a

8

question of fact that cannot be adjudicated on a motion to dismiss. (Doc. #37, p. 3.)  While several of the cases defendant cites were decided at the motion to dismiss stage, the Court agrees that if there are plausible allegations in the complaint the issue is to be resolved after development of a full record.  The DOL has specifically stated that "whether certain articles of clothing that an employer may require an employee to wear at work constitute a uniform is a question of fact to be considered in the context of each particular case."  U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. FLSA2008-4 (May 15, 2008); see also Schamis v. Josef's Table, LLC, 2014 WL 1463494, *4 (S.D. Fla. Apr. 15, 2014) (denying motion to dismiss on "uniform" issue and stating "the Court will make this decision upon a complete record").  Since "a motion to dismiss is not the vehicle to resolve questions of fact," Becker v. City of Fort Myers, 2019 WL 2929326, *2 n.4 (M.D. Fla. July 8, 2019), and the complaint plausibly sets forth facts as to the uniform issue, the Court declines to decide the uniform issue as a matter of law.

Counts One and Three also allege Dix and similarly situated servers were not reimbursed for "tools" defendant required them to purchase, such as a wine key, black pens, and a lighter.  Pursuant to DOL regulations,

> if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the

>     employer's particular work, there would be a violation
>     of the [FLSA] in any workweek when the cost of such tools
>     purchased by the employee cuts into the minimum or
>     overtime wages required to be paid him under the [FLSA].

29 C.F.R. § 531.35.  Accordingly, "[i]f an expense is determined to be primarily for the benefit of the employer, the employer must reimburse the employee during the workweek in which the expense arose."  Arriaga, 305 F.3d at 1237 (citing 29 C.F.R. § 531.35).[2]  Therefore, "[w]orkers must be reimbursed during the first workweek for pre-employment expenses which benefit the employer, to the point that wages are at least equivalent to the minimum wage."  Id. (citation omitted).  The FLSA does not require the employer to add the costs of the tools onto the regular wages, but only to reimburse the worker up to the point that the minimum wage is met.  Id. at 1237 n.11.

Defendant argues that Dix was not entitled to reimbursement for the wine key, black pens, and lighter because such generic, everyday items can be used outside of employment, and therefore the expense of purchasing such items was not incurred primarily for defendant's benefit. (Doc. #26, p. 6.)  The amended complaint, however, alleges defendant required Dix and other servers to

---

[2] There is no legal difference between an employer requiring a worker to have the tools before the first day of work, requiring the tools be purchased during the first workweek, or deducting the cost of the tools from the first week's wages.  Arriaga, 305 F.3d at 1237.

purchase these items as part of their employment. The DOL has specifically included "[t]ools of the trade" among a list of items considered "to be primarily for the benefit of convenience of the employer." 29 C.F.R. § 531.3. The Court finds the allegations in the amended complaint on this issue are sufficient under Rule 8 and Rule 12.

Alternatively, defendant argues that because the amended complaint states the tools only cost $12.75, the alleged damages are de minimis and therefore not cognizable under the FLSA. (Doc. #26, p. 6 n.7.) The Court disagrees.

Federal regulations provide that in recording working time under the FLSA, "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded." 29 C.F.R. § 785.47. Courts have held "that such trifles are *de minimis*." Id.; see also Peterson v. Nelnet Diversified Sols., LLC, 400 F. Supp. 3d 1122, 1141 (D. Colo. 2019) (determining "pre-shift activities" constituted *de minimis* time and were therefore not compensable).

The issue in this case, however, is not whether defendant failed to compensate servers for certain amounts of *de minimis* time, but whether defendant's failure to compensate servers for the tools resulted in the servers receiving less than the statutorily required minimum wage. Accordingly, the Court rejects

11

defendant's argument that the claim is not cognizable. See <u>Benton v. Deli Mgmt., Inc.</u>, 396 F. Supp. 3d 1261, 1275 (N.D. Ga. 2019) ("Jason's Deli effectively argues that Plaintiffs' wages were reduced only an insignificant amount and thus should be disregarded. There is, however, no authority to support the contention that Jason's Deli can escape paying shortfalls in minimum wage payments because the shortfalls are '*de minimis*.'" (marks and citation omitted)).

Having reviewed the amended complaint, the Court finds Counts One and Three set forth sufficient allegations to survive dismissal. Accordingly, the Court will now turn to defendant's arguments pertaining to Counts Two and Four.

**(2) Minimum Wage, Tip Credit, and "Dual Jobs"**

Generally, the FLSA mandates that covered employees receive at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). Similarly, the Florida Constitution provides that employers are required to "pay Employees Wages no less than the Minimum Wage for all hours worked in Florida." Fla. Const. Art. X, § 24(c). Under the FLSA, however, an employer may pay a reduced "tip credit" wage for "tipped employees," "so long as the employee's tips are sufficient to make up the difference between the tip credit wage and the full minimum wage." <u>Bowe v. HHJJ, LLC</u>, 2016 WL 11234451, *2 (M.D. Fla. Dec. 13, 2016) (citing 29 U.S.C. § 203(m)). The same credit applies for purposes of Florida's minimum wage. See Fla. Const.

Art. X, § 24(c) ("For tipped Employees meeting eligibility requirements for the tip credit under the FLSA, Employers may credit towards satisfaction of the Minimum Wage tips up to the amount of the allowable FLSA tip credit in 2003.").

Some employees are employed in a "dual job," one of which is tipped and one of which is not. In such a situation, a federal regulation provides that the employer may not take a tip credit for the hours the employee worked in the non-tipped occupation. 29 C.F.R. § 531.56(e). This regulation provides:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation, the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation as maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

Until recently, the DOL had consistently interpreted this regulation as placing a twenty percent limit on the amount of time a tipped employee may spend on non-tipped work before the employee is deemed to be employed in dual jobs. See U.S. Dep't of Labor,

13

Field Operations Handbook, § 30d00(f)(3) (rev. Dec. 15, 2016) ("[W]here the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties.").

Starting in 2018, however, the DOL abandoned the twenty percent interpretation via various agency documents. See U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. FLSA2018-27 (Nov. 8, 2018) ("We do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct costumer-service duties and all other requirements of the [FLSA] are met."); U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(2) (rev. Feb. 15, 2019) ("29 CFR 531.56(e) permits the employer to take a tip credit for any time the employee spends in duties related to the tipped occupation, even though such duties are not themselves directed toward producing tips."); U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No. 2019-2 (Feb. 15, 2019) (noting that the twenty percent rule "created confusion for the public" and that now "an employer may take a tip credit for any duties that an employee performs in a tipped occupation that are related to that occupation and either performed contemporaneous with the tip-producing activities or for a

14

reasonable time immediately before or after the tipped activities"). The DOL made its new interpretation retroactive and applicable to any open or new investigation concerning work performed prior to November 8, 2018. U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No. 2019-2 (Feb. 15, 2019).

Counts Two and Four of the amended complaint allege that defendant failed to pay Dix and other servers the applicable minimum wage for hours spent performing "non-tipped" duties, which constituted twenty-five percent of the work shift. (Doc. #6, ¶¶ 52, 92, 151.) In its motion, defendant argues such claims must be dismissed because the DOL has now abandoned the twenty percent rule. (Doc. #26, pp. 7-13.) While plaintiffs acknowledge that the DOL has abandoned its prior interpretation, they nonetheless argue the twenty percent rule survives because the agency documents discussed above are not entitled to any deference. (Doc. #37, pp. 13-19.)

The Court need not resolve the dispute over which agency interpretation of 29 C.F.R. § 531.56(e) is entitled to deference. No binding precedent resolves the dispute, and the regulation remains unchanged. While the parties argue over the DOL's interpretation of the regulation, the real issue is whether the amended complaint plausibly states a cause of action under the regulation. Applying the standards governing a motion to dismiss summarized above, the Court finds that it does, regardless of which

agency interpretation is utilized. Because defendant's arguments for dismissal of Counts Two and Four are based on the application of the DOL's new interpretation of 29 C.F.R. § 531.56(e) (Doc. #26, pp. 7-22), defendant's requests to dismiss these claims are denied.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss Plaintiff's Amended Class/Collective Action Complaint (Doc. #26) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __28th__ day of August, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties of record