UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT DIX, on behalf of
himself and all others
similarly situated and
MICHAEL PALOMBO,

       Plaintiffs,

v.                 Case No:  2:20-cv-98-FtM-29MRM

RCSH OPERATIONS, LLC,

       Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on plaintiffs' Motion for Conditional Certification of Collective Action Under the FLSA and Class Action Under Rule 23 and Facilitation of Court-Authorized Opt-In Notice (Doc. #22) filed on May 1, 2020.  Defendant filed an Opposition (Doc. #27) on June 15, 2020, to which plaintiffs filed a Reply (Doc. #32) on June 29, 2020.  For the reasons set forth below, the motion is denied.

**I.**

On March 1, 2020, plaintiff Robert Dix (plaintiff or Dix) filed a four-count Amended Class/Collective Action Complaint (Doc. #6) (Amended Complaint) against defendant RCSH Operations, LLC (defendant or RCSH), alleging violations of the federal Fair Labors Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, (Counts One and

Two), and the Florida Minimum Wage Act (FMWA), § 448.110, Fla. Stat. and the Florida Constitution, Article X, § 24, (Counts Three and Four). All four claims generally relate to defendant's alleged failure to pay minimum wage to the restaurant servers it employs. Specifically, Counts One and Three relate to defendant's failure to reimburse uniform and tool expenses (Doc. #6, pp. 13-15, 18-24), while Counts Two and Four relate to the performance of non-tipped duties (id. pp. 15-17, 24-29.) The Amended Complaint presents the FLSA claims as collective actions pursuant to 29 U.S.C. § 216(b), and the FMWA/Florida Constitution claims as class actions pursuant to Federal Rule of Civil Procedure 23.[1] Subsequent to the Amended Complaint being filed, Michael Palombo joined the action as a plaintiff. (Doc. #21.)

Based on the Amended Complaint and the evidence submitted by the parties[2], the following background facts are relevant to certification requests:

---

[1] The Eleventh Circuit allows FLSA claims and class actions claims to be brought in the same proceeding. Calderone v. Scott, 838 F.3d 1101, 1103 (11th Cir. 2016).

[2] "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011) (citations and marks omitted).

Defendant is a New Orleans limited liability company which operates a nationwide restaurant chain with numerous locations in the state of Florida. (Doc. #6, ¶¶ 1, 13.) Plaintiff Dix worked for defendant as a server at defendant's Bonita Springs steakhouse from August 2018 to September 2019. (Id. ¶ 5, 25.) Plaintiff Palombo worked as a server at the same Bonita Springs steakhouse from October 2017 to February 2020. (Doc. #22-2, p. 34.)

Both plaintiffs have supplied Declarations in support of the allegations in the Amended Complaint and the motion for certification. (Doc. #22-1; Doc. #22-2.) Both Declarations contain similar assertions:

- Upon being hired as a server, defendant required plaintiffs to spend thirty hours training. During this time, plaintiffs were paid $8.25 per hour. (Doc. #22-1, ¶¶ 5, 13-14; Doc. #22-2, ¶¶ 6, 13-14.)

- Prior to beginning their employment, plaintiffs were required by defendant to purchase a "uniform" consisting of formal pressed button-down white oxford dress shirts, black formal slacks, a muted, non-offensive colored tie, a black belt, black socks, and black non-slip dress shoes. Each plaintiff spent over $260 on this attire and defendant required the uniform be worn in order for plaintiffs to work. (Doc. #22-1, ¶¶ 6-8, 12; Doc. #22-2, ¶¶ 7-9, 17.)

- In addition to the attire, defendant required plaintiffs to purchase a wine key, black pens, and a lighter for use as a server.  Each plaintiff spent $12.75 on these tools.  Neither plaintiff was reimbursed for the expenses related to the tools or the clothing.[3]  (Doc. #22-1, ¶¶ 9-11; Doc. #22-2, ¶¶ 10-12.)

- After completing the week of training, each plaintiff was paid a reduced hourly wage plus the tips he received as a server.  Each plaintiff was typically scheduled to report to work around 4 p.m. and work through 10 p.m.  Defendant would instruct plaintiffs and other similar servers to spend time setting up and "breaking down" the restaurant.  As such, servers would regularly spend at least an hour and a half of their six-hour shift performing non-tipped duties.  Neither plaintiff was ever paid more than their reduced hourly wage, regardless of the length of time they spent performing non-tipped duties.[4]  (Doc. #6, ¶¶ 49-50; Doc. #22-1, ¶¶ 24-35; Doc. #22-2, ¶¶ 25-41.)

---

[3] "Upon information and belief," plaintiffs state defendant required all servers in each of its restaurant locations "to comply with this nationwide uniform company policy," and that neither plaintiff was aware of a server "who was ever reimbursed for the costs/expenses for purchase and maintenance of the uniform, and purchase of the tools." (Doc. #22-1, ¶¶ 22-23; Doc. #22-2, ¶¶ 23-24.)

[4] "Upon information and belief," plaintiffs state that all servers in defendant's Florida restaurants received the same

Plaintiffs now seek conditional certification of two classes under the FLSA and certification of two classes under Rule 23 and the FMWA. (Doc. #22, p. 2.)

## II.

Plaintiffs seek conditional certification of a collective action under the FLSA for two proposed classes:

> All Restaurant Servers who worked for Defendant throughout the United States during the three (3) years preceding this lawsuit who were required to purchase a uniform and tools prior to beginning their first week of employment with Defendant and not reimbursed these costs.
>
> . . .
>
> All Restaurant Servers who worked for Defendant throughout the United States during the three (3) years preceding this lawsuit who were required to spend more than 20% of their shifts performing "non-tipped" incidental duties and did not receive the full applicable federal minimum wage for this work.

(Doc. #22, p. 2.)

### A. Conditional Collective Action Certification Requirements

The FLSA authorizes "similarly situated" employees to maintain a collective action against one or more employers accused of violating the statute's wage provisions. 29 U.S.C. § 216(b). Certification of an FLSA collective action is typically a two-stage process. Morgan v. Family Dollar Stores, Inc., 551 F.3d

---

reduced hourly wage regardless of the duties and tasks they performed during a work shift. (Doc. #22-1, ¶¶ 36; Doc. #22-2, ¶¶ 29-31.)

1233, 1260 (11th Cir. 2008) ("[W]e have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase."). The first stage, and the one relevant to this motion, is known as the "notice" or "conditional certification" stage. Id. at 1260-61. "At the notice stage, a court must determine whether: (1) there are other employees who desire to opt in to the action; and (2) the employees who desire to opt in are 'similarly situated.'" Hart v. JPMorgan Chase Bank, N.A., 2012 WL 6196035, *3 (M.D. Fla. Dec. 12, 2012) (citing Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Although this determination is made using a "fairly lenient standard," the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Id. (quoting Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996)). The decision to conditionally certify a collective FLSA action lies within the sound discretion of the district court. Id. (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001)).

## B. Satisfaction of Conditional Certification Requirements

Defendant opposes conditional certification, asserting plaintiffs have not sufficiently demonstrated either requirement, i.e., (1) that other individuals in the proposed FLSA classes desire to opt in to the litigation, or (2) that individuals in the

putative FLSA classes are sufficiently similarly situated.  (Doc. #27,  pp.  6-12.)   Defendant  also  argues  that  the  "highly individualize nature" of the claims in the Amended Complaint makes collective  action  treatment  "unworkable."   (Id. pp.  12-15.) Because the Court agrees with defendant's first argument, it need not address the remaining requirement.

"[P]laintiffs have the burden of demonstrating a reasonable basis  for  crediting  their  assertions  that  aggrieved  individuals exist[] in the broad class that they proposed."  Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983).  "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees."  Thomas v. Waste Pro USA, Inc., 360 F.  Supp.  3d  1313,  1321  (M.D.  Fla.  2019)  (quoting  Vondriska v. Premier  Mortg.  Funding,  Inc.,  564  F.  Supp.  2d  1330,  1334  (M.D. Fla. 2007)).   However, a plaintiff's or attorney's belief in the existence of other employees who desire to opt in and "unsupported expectations  that  additional  plaintiffs  will  subsequently  come forward" are insufficient to justify certification.  Hart, 2012 WL 6196035, *4 (citation omitted); see also Haynes 696 F.2d at 887 (noting that there was no evidence before the district court where "[t]he judge had before him only counsel's unsupported assertions that  FLSA  violations  were  widespread  and  that  additional plaintiffs would come from other stores").

Plaintiffs attempt to meet their burden of demonstrating other employees wish to opt in by asserting that: (1) plaintiff Palombo has already joined the lawsuit; (2) other employees have expressed interest in joining the lawsuit but are afraid of possible retaliation; and (3) there must be others since defendant applies a common payroll and uniform policy to all its restaurant servers in the United States.  (Doc. #22, pp. 15-16.)  Defendant responds that this is an insufficient showing.  (Doc. #27, pp. 6-8.)  The Court agrees with defendant.

The fact that plaintiff Palombo has joined in this action is insufficient by itself to support certification of the nationwide class plaintiffs propose.  One opt-in plaintiff may or may not be deemed sufficient.  Compare Torres v. Nature Coast Home Care LLC, 2016 WL 5870217, *2 (M.D. Fla. Oct. 7, 2016)("[E]ven one opt-in notice can be sufficient to meet the first requirement for conditional certification."), with Denson v. Architectural Coatings, Inc., 2011 WL 46122, *2 (M.D. Fla. Jan. 6, 2011) (concluding plaintiffs failed to provide sufficient evidence that other employees wanted to opt in despite three individuals filing consents to join).  The fact that only one employee has joined this action since it was initiated over nine months ago undermines the argument that additional servers wish to join.  See Kubiak v. S.W. Cowboy, Inc., 2014 WL 2625181, *11 (M.D. Fla. June 12, 2014) ("[T]he fact that no additional server has sought to opt-in for

8

nearly a year while this lawsuit has been pending, further casts doubt on Plaintiffs' assertion that other servers desire to join this action, and indeed supports the opposite inference that all those interested in joining this lawsuit have already done so." (citation and marks omitted)); <u>Denson</u>, 2011 WL 46122, *2 ("[S]ince the named Plaintiff . . . initiated this litigation over seven months ago, only three other individuals have come forward to join this lawsuit.   Therefore, the Court will not approve the certification of the class.").

Plaintiffs also state that "[o]ther current and former employees wish to opt-in to this lawsuit but are afraid of possible retaliation," and that plaintiff Palombo "has spoken with other servers about wanting to join but individuals are scared of losing their jobs unless the court authorizes notice." (Doc. #22, pp. 15-16.) To support these assertions, plaintiffs cite generally to their own Declarations, which are attached to the motion. (<u>Id.</u>) However, neither Declaration contains any reference to other employees, current or former, who may wish to join this litigation.[5] (Doc. #22-1, pp. 28-32; Doc. #22-2, pp. 34-39.) Accordingly, the motion's assertion that other employees wish to join but are afraid is unsupported in the record. <u>See</u> <u>Kubiak</u>,

---

[5] Defendant notes this problem in its Opposition. (Doc. #27, p. 7 n.4.) Nonetheless, plaintiffs fail to address this issue in their Reply.

2014 WL 2625181, *10 ("Plaintiffs' conclusory statements and mere belief or unsupported expectations that others desire to join, without providing any specific facts to support their belief that other employees are interested in opting in, do not provide a sufficient basis for certification.").

Finally, plaintiffs note that defendant enforced a common payroll policy of refusing to properly compensate servers, and applied its uniform policy throughout the United States. (Doc. #22, p. 16.) Plaintiffs seem to be suggesting that because defendant had the same policies in force across the country, a class of nationwide servers exists. The issue, however, is not whether a class of potential plaintiffs exists, but whether other similarly situated employees who wish to join the collective action exist. See Rojas v. Uber Technologies, Inc., 2017 WL 2790543, *3 (S.D. Fla. June 27, 2017) ("Rojas claims that 'similarly situated employees as Plaintiff exist.' However, Rojas must show that there are similarly situated employees *who desire to opt-in*." (citations omitted)). Even assuming plaintiffs' assertions are correct, which is disputed[6], plaintiffs have failed to offer evidence that

---

[6] Plaintiffs support their claims that the payroll policy is widespread by citing to their Declarations, which are predominantly based "upon information and belief" and mainly relate to Florida. (Doc. #22-1, pp. 30-32; Doc. #22-2, pp. 36-37.) To support the claim that the uniform policy is nationwide, plaintiffs cite to defendant's job advertisements that require servers report to work "in the correct uniform." (Doc. #22-3, pp.

any of these nationwide employees wish to join this action.  See Hart, 2012 WL 6196035, *4 ("Plaintiff has failed to make an affirmative showing that other employees from across the nation wish to join this lawsuit so as to warrant conditional certification."); see also Rojas, 2017 WL 2790543, *3 (finding plaintiff failed to meet burden of demonstrating there were others that desired to opt in to nationwide class when plaintiff only provided his declaration and one other employee's notice of consent to join); Ramirez v. Urban Outfitters, Inc., 2014 WL 12573981, *3 (M.D. Fla. Apr. 22, 2014) ("Plaintiff has failed to demonstrate to the Court's satisfaction that other employees desire to opt-in based on the conclusory declarations of the three plaintiffs participating in this case.  The Court finds that Plaintiff has not demonstrated a reasonable basis for crediting the assertion that aggrieved individuals exist in the class she proposes, particularly when compared to the 181 Anthropologie stores operating in 41 different states throughout the United States." (citation omitted)).

Although plaintiffs' burden at this stage is not heavy, "it is not 'invisible.'" Hart, 2012 WL 6196035, *4 (quoting Brooks v. Rainaldi Plumbing Inc., 2006 WL 3544737, *2 (M.D. Fla. Dec. 8,

---

41-75.)  In contrast, defendant has provided evidence that no such "corporate-wide" policies exist.  (Doc. #27-1, pp. 27-30.)

2006)).   Based on the evidence before it, the Court finds plaintiffs have failed to meet their burden of demonstrating the existence of other similarly situated employees who wish to opt in to the FLSA collective action.   Conditional certification of the two proposed FLSA classes will be denied.

### III.

Plaintiffs seek certification of the following classes under Rule 23 with regards to the FMWA/Florida Constitution claims:

> All Restaurant Servers who worked for Defendant within Florida during the five (5) years preceding this lawsuit, and who were required to purchase a uniform prior to beginning their first week of employment with Defendant and not reimbursed these costs.
>
> . . .
>
> All Restaurant Servers who worked for Defendant within Florida during the five (5) years preceding this lawsuit, and who were not paid the full applicable minimum wage when more than 20% of their shift was spent performing non-tipped duties and responsibilities.

(Doc. #22, p. 2.)  For the reasons explained below, the Court denies the requested certification.

### A. Rule 23 Certification Standards

The Eleventh Circuit has summarized the relevant law governing class certification as follows:

> Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is "adequately defined and clearly ascertainable." DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970) . . . .

If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then establish the four requirements listed in Federal Rule of Civil Procedure 23(a). Those requirements are:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Those four requirements are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." See, e.g., Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003).

In addition to establishing the Rule 23(a) requirements, a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b). Fed. R. Civ. P. 23(b); Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1279 (11th Cir. 2000).

Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012)

(footnote omitted).  Additionally,

[t]he party *seeking* class certification has the burden of proof. And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party with the burden of proof loses. All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation. A district court that has doubts about whether the requirements of Rule 23 have been met should refuse certification until they have been met.

Brown v. Electrolux Home Products, Inc., 817 F.3d 1225, 1233–34 (11th Cir. 2016) (marks and citations omitted).  Thus, a plaintiff seeking class certification

> must affirmatively demonstrate his compliance with Rule 23 by proving that the requirements are in fact satisfied. And the district court must conduct a rigorous analysis to determine whether the movant carried his burden, which will frequently entail overlap with the merits of the plaintiff's underlying claim. Of course, the district court can consider the merits only to the extent they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. But if a question of fact or law is relevant to that determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor.

Id. at 1234 (marks, emphasises, and citations omitted).

## B. Adequately Defined and Clearly Ascertainable Class

The Eleventh Circuit requires that the proposed class be "adequately defined" and "clearly ascertainable."  Little, 691 F.3d at 1303; Karhu v. Vital Pharm., Inc., 621 Fed. App'x 945, 946 (11th Cir. 2015).  In unpublished opinions, the Eleventh Circuit has stated that a class is not ascertainable "unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." Karhu, 621 Fed. App'x at 946 (citing Bussey v. Macon Cty. Greyhound Park, Inc., 562 Fed App'x 782, 787 (11th Cir. 2014)).  "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" Id. (quoting Bussey, 562 Fed. App'x at 787); see also Belcher v.

<u>Ocwen Loan Servicing, LLC</u>, 2018 WL 1701963, *5 (M.D. Fla. Mar. 9, 2018) ("Trial courts within the Eleventh Circuit have commonly applied the administratively feasible requirement.").[7]

Despite plaintiffs' "burden of satisfying all implicit and explicit requirements of Federal Rule of Civil Procedure 23," <u>Bussey</u>, 562 Fed. App'x at 787, the motion does not address whether the proposed classes are adequately defined or clearly ascertainable. Regarding the latter element, the motion simply seeks discovery of defendant's employment records since February 2017 (Doc. #22, p. 17), suggesting plaintiffs intend to use these records to identify potential class members. However, "[a] plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." <u>Karhu</u>, 621 Fed. App'x at 948. Because plaintiffs have offered no argument as to whether the

---

[7] There is currently a split among the circuits as to whether a plaintiff must demonstrate at the certification stage an "administratively feasible" method of identifying class members. <u>Compare</u> <u>Byrd v. Aaron's Inc.</u>,784 F.3d 154, 163 (3d Cir. 2015) <u>and</u> <u>Young v. Nationwide Mut. Ins. Co.</u>, 693 F.3d 532, 537-38 (6th Cir. 2012), <u>with</u> <u>Mullins v. Direct Digital, LLC</u>, 795 F.3d 654, 658 (7th Cir. 2015) <u>and</u> <u>Briseno v. ConAgra Foods, Inc.</u>, 844 F.3d 1121, 1125-26 (9th Cir. 2017). The Eleventh Circuit has yet to address this split in a published opinion. <u>Ocwen Loan Servicing, LLC v. Belcher</u>, 2018 WL 3198552, *3 (11th Cir. June 29, 2018).

identification of the proposed class members is administratively ascertainable, the Court finds they have failed to meet their burden.  See Rivera v. Servis One, Inc., 2019 WL 1034071, *4 (M.D. Fla. Jan. 24, 2019) ("Plaintiffs do not provide any additional information regarding ascertainability in the Motion, and this conclusory assertion that the proposed class members can be identified using the Defendant's records is insufficient." (citing Karhu, 621 Fed. App'x at 948)).[8]  As the clearly ascertainable

---

[8] Even assuming plaintiffs intend to identify class members via defendant's employment records, it is unclear if this would be administratively feasible.  As noted, "[i]dentifying class members is administratively feasible when it is a manageable process that does not require much, if any, individual inquiry."  Karhu, 621 Fed. App'x at 946 (marks and citation omitted).  Defendant has produced evidence (1) that it does not have corporate-wide policies requiring "side work" or the purchase of uniforms and tools, and (2) that there is a great variety in the amount of side work performed by servers, and in the clothes worn and tools used by servers on the job.  (Doc. #2701, pp. 27-30.)  Accordingly, while defendant's records would be useful in identifying all the servers that have worked for defendant since February 2017, it would seem greater "individual inquiry" would nonetheless be required to determine class membership.  See Sliwa v. Bright House Networks, LLC, 333 F.R.D. 255, 272 (M.D. Fla. 2019) ("Because identifying the members of Plaintiff's proposed classes would require significant individualized inquiries, Plaintiff has not proposed an administratively feasible method for identifying the classes, and Plaintiff has thus failed to carry his burden of establishing ascertainability."); Stalley v. ADS Alliance Data Sys., Inc., 296 F.R.D. 670, 678 (M.D. Fla. 2013) ("[A] class should not be certified if the court must engage in individualized determinations of disputed fact in order to ascertain a person's membership in the class."); Walewski v. ZeniMax Media, Inc., 2012 WL 834125, *4 (M.D. Fla. Jan. 30, 2012) ("A court should deny class certification . . . where the number of individualized determinations required to determine class membership becomes too administratively difficult." (citation omitted)).

element is a prerequisite for class certification, <u>Little</u>, 691 F.3d at 1304, plaintiffs' failure to establish this element is sufficient grounds to deny the motion.   Nonetheless, the Court will address the other Rule 23 factors.

### C. Numerosity

Plaintiffs may utilize a class action suit "only if: (1) the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." <u>Evans v. U.S. Pipe & Foundry Co.</u>, 696 F.2d 925, 930 (11th Cir. 1983) (citations omitted).   "Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1267 (11th Cir. 2009).

"The proper focus for the numerosity requirement is whether the joinder of all class members would be impracticable in view of their numbers and all other relevant factors." <u>Kubiak</u>, 2014 WL 2625181, *12 (citation omitted).   Factors to consider are "the geographic dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses." <u>Id.</u> (citation omitted).   As noted, while plaintiffs need not show the precise number of members in the class, they

must show "some evidence of or reasonably estimate the number of class members."  Id. (citation omitted).

Defendant argues plaintiffs cannot establish the numerosity element because joinder of all servers who fall within the proposed class is feasible.  (Doc. #27, p. 16.)  This argument seems to be premised on defendant's assertion that "there are only 14 RCSH restaurants in Florida."  (Id.)  However, defendant has also offered evidence that it employs approximately two hundred servers throughout the state of Florida.[9]  (Doc. #27-1, ¶ 9.)  This is consistent with plaintiffs' "conservative estimate" that three hundred servers fall within the proposed classes.  (Doc. #22, p. 21.)  The Court finds plaintiffs have offered a reasonable estimate of the proposed classes and, given this large number, demonstrated the impracticability of joinder.  See Schojan v. Papa Johns Int'l,

_____

[9] There is a dispute between the parties as to how much weight the court should give this evidence.  In support of its Opposition, defendant has offered a declaration from Katie Gralton, a Human Resources Generalist employed by non-party Ruth's Hospitality Group, Inc.  (Doc. #27-1, ¶¶ 2-3.)  Ms. Gralton makes various assertions with regards to defendant, its restaurants, and its policies.  (Id. ¶¶ 3-37.)  In response, plaintiffs argue that because Ms. Gralton does not work for defendant, there is no information to explain how she has personal knowledge of defendant or its operation.  (Doc. #32, p. 1.)  At the same time, however, plaintiffs rely upon Ms. Gralton's estimate of two hundred servers to support their argument for numerosity.  (Id. p. 10.)  Given that the parties seem to agree at least two hundred servers currently work for defendant, the Court finds it unnecessary to address the other issues at this time.

<u>Inc.</u>, 303 F.R.D. 659, 665 (M.D. Fla. 2014) (noting that the numerosity requirement is a "generally low hurdle"); <u>Kubiak</u>, 2014 WL 2625181, *13 ("While there is no fixed class size that will satisfy the numerosity requirement, the Court is satisfied that joinder of more than 150 to 200 individuals would be impracticable."). Accordingly, the Court concludes the numerosity element is satisfied.

### D. Commonality

Under Rule 23(a), plaintiffs must also establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this commonality requirement, the class members' "claims must depend upon a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution." <u>Dukes</u>, 564 U.S. at 350. This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>

In the motion, plaintiffs assert that the following issues are common for all members of the proposed classes:

    a. Whether defendant was their employer during the relevant time period;

    b. Whether defendant required servers to incur uniform expenses without being reimbursed;

    c. Whether defendant required servers to incur tool expenses without being reimbursed;

d. Whether defendant has any good-faith defense for failing to comply with the FMWA during the relevant time period;

e. Whether defendant required servers to spend more than twenty percent of their shifts performing non-tipped duties;

f. Whether defendant failed to pay servers the applicable Florida minimum wage when they spent more than twenty percent of their shift performing non-tipped duties.

(Doc. #22, p. 23.)

The Court agrees that common issues of law and fact exist. For example, Count Three of the Amended Complaint is based upon an assertion that defendant required its servers purchase a uniform. (Doc. #6, p. 18.) However, a determination that the attire defendant requires newly-hired servers to purchase does not constitute a "uniform" under federal and Florida law "will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. Accordingly, given the similarity in the claims of the proposed class members as well as the common issues of fact and law applicable to those claims, the Court finds plaintiffs have sufficiently established the commonality element. See Tillman v. Ally Fin. Inc., 2017 WL 7194275, * 6 (M.D. Fla. Sept. 29, 2017) (noting the "commonality requirement measures the extent to which all members of a putative class have similar claims" (citation omitted)); Elkins v. Equitable Life Ins. of Iowa, 1998 WL 133741, *11-12 (M.D. Jan. 27, 1998) (noting that the "main inquiry" for commonality is "whether

at least one issue exists that affects all or a significant number of proposed class members," and that the requirement can be satisfied "where plaintiffs allege common or standardized conduct by the defendant directed toward members of the proposed class").[10]

**E. Typicality**

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" <u>Ault v. Walt Disney World Co.</u>, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting <u>Prado-Steiman v. Bush</u>, 221 F.3d 1266, 1278-79 (11th Cir. 2000)). "This nexus exists if the claims or defenses of the class and the class representative arise from the same event or pattern

---

[10] Defendant argues that because the Court will have to make individualized determinations for each class member, it is impossible to resolve the claims "in one stroke." (Doc. #27, p. 17.) Specifically, defendant argues the Court will have to individually determine (1) whether each server was required to make certain purchases, (2) how much they spent, (3) whether they were reimbursed, (4) whether they were required to perform certain duties, (5) whether the duties were tipped or non-tipped, (6) how much time they spent on those duties, and (7) how they were compensated for such time. (<u>Id.</u>) The Court finds this argument is more applicable to the predominance issue that will be addressed later in this Opinion and Order.

or practice and are based on the same legal theory." <u>Ault</u>, 692 F.3d at 1216 (marks and citation omitted). "The main focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests." <u>Kubiak</u>, 2014 WL 2625181, *15.

Defendant argues plaintiffs fail to demonstrate typicality because the proposed class members were in fact not required to purchase a specific uniform or tools, or required to perform non-tipped duties. (Doc. #27, p. 18.) Plaintiffs, however, have offered evidence via their Declarations and the employment announcements that contradict defendant's assertions. (Doc. #22-1; Doc. #22-2; Doc. #22-3; Doc. #32-2.) Given that the claims of the proposed class members are based upon the same alleged conduct and the same legal theory as plaintiffs', the Court finds plaintiffs have sufficiently demonstrated typicality. <u>See</u> <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984) ("A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."); <u>Mesa v. Ag-Mart Produce, Inc.</u>, 2008 WL 2790224, *6 (M.D. Fla. July 18, 2008) ("The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.").

**F. Adequacy of Representation**

The fourth requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This analysis involves two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted).  "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." Id. at 1189 (citations omitted).

Additionally, class counsel must fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(4). "This requirement, aimed at ensuring the rights of absent class members are vigorously protected, is not satisfied where class counsel represents parties whose interests are fundamentally conflicted." W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co., 737 Fed. App'x. 457, 464 (11th Cir. 2018) (citations omitted).

Plaintiffs' motion asserts that there is no conflict in the case, that the attorney they have retained has experience handling FMWA claims and federal wage litigation, and that the interests of the class will be fairly and adequately represented.  (Doc. #22,

p. 24.)  Defendant does not contest any of these assertions.  As there is no indication that the interests of plaintiffs are in conflict with the interests of the proposed class members, nor any indication plaintiffs' counsel will not fairly and adequately represent the interests of the class, the Court finds the adequacy of representation prong of Rule 23 is satisfied.  See In re Fla. Cement & Concrete Antitrust Litig., 2012 WL 27668, *5 (S.D. Fla. Jan. 3, 2012) (finding adequacy of representation prong satisfied when there was nothing to suggest a conflict and no reason to doubt attorney's qualifications or ability to conduct the litigation).

### G. Rule 23(b) Requirements

Finally, in addition to the Rule 23(a) requirements, plaintiffs must also establish that the proposed classes satisfy at least one of the three requirements listed in Rule 23(b).  Fed. R. Civ. P. 23(b).  Here, plaintiffs seek certification under Rule 23(b)(3) (Doc. #22, p. 24), which permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The Eleventh Circuit has stated:

> To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements. The district court should then classify these issues as common questions or individual questions by predicting

how the parties will prove them at trial. Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will var[y] from member to member.

After identifying the common and individual questions, the district court should determine whether the common questions predominate over the individual ones. We have adopted the following rule of thumb:

> [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered. . . . If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

But predominance requires a qualitative assessment too; it is not bean counting, and the relative importance of the common versus individual questions also matters. District courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

Brown, 817 F.3d at 1234-35 (citations and punctuation omitted).

The Court finds there are common questions of fact and law that would apply to each proposed class. For example, in Count Three plaintiffs allege defendant required them to purchase a uniform and failed to reimburse them, and that this resulted in a per se violation of the FMWA because they were only being paid minimum wage at the time. Accordingly, a common issue would be

whether defendant paid all its newly hired servers minimum wage during the first week of training. However, there are also individual questions which the Court concludes predominate the claim. For example, while it appears defendant requires its servers wear a certain style of clothing, the evidence suggests defendant does not require newly hired servers purchase specific attire or even any attire at all if they own the type of clothing required. Accordingly, individualized inquiries would have to be conducted as to each server regarding (1) whether they purchased attire as part of their employment, (2) what type of attire was purchased, and (3) whether that specific attire constituted a "uniform" under the FLSA and FMWA. See Bussey, 562 Fed. App'x at 789 ("[C]ommon issues will not predominate over individual questions if, as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.") (citation and marks omitted).

Similar problems exist as to Count Four, which alleges defendant failed to pay plaintiffs minimum wage for the time they spent performing non-tipped duties when such duties exceeded twenty percent of their shifts. Such a claim would require numerous individualized determinations for the proposed class members, such as whether servers were required to perform non-tipped duties, how much time each server spent on non-tipped

duties, and what wage each server was being paid at that time. These individual questions predominate whatever common issues may exist. See Luna v. Del Monte Fresh Produce (Se.), Inc., 354 Fed. App'x 422, 424 (11th Cir. 2009) ("The district court did not err in finding that liability would hinge upon evaluation of proof as to each individual's earnings and time worked. . . . Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." (marks and citation omitted)).

As the Court has determined individual issues of law and fact predominate both Counts Three and Four, plaintiffs have failed to meet their burden under Rule 23(b)(3). Accordingly, it is unnecessary for the Court to address the superiority prong. See Carey v. United States, 2013 WL 7118116, *6 (M.D. Fla. July 17, 2013) ("Due to Plaintiffs' failure to establish numerosity under Rule 23(a) and predominance under Rule 23(b), it is unnecessary to address whether the superiority requirement of Rule 23(b)(3) has been met.").

As plaintiffs have failed to establish an administratively feasible method of identifying proposed class members, and failed to demonstrate common issues of law and fact predominate in Counts

27

Three and Four, the Court concludes class certification under Rule 23 is inappropriate.

Accordingly, it is now

**ORDERED:**

Plaintiffs' Motion for Conditional Certification of Collective Action Under the FLSA and Class Action Under Rule 23 and Facilitation of Court-Authorized Opt-In Notice (Doc. #22) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this   24th   day of November, 2020.

John E. Steele
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record